**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **VILMA BLANCI ARREAGA BARRIOS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **26-10336-BEM** |
| | ) | |
| **PATRICIA HYDE, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**PETITIONER'S MOTION FOR ATTORNEY'S FEES AND EXPENSES UNDER THE**
**EQUAL ACCESS TO JUSTICE ACT**

**MURPHY, J.**

Petitioner Vilma Blanci Arreaga Barrios ("Petitioner") filed a petition for a writ of habeas corpus challenging her immigration detention. This Court granted the petition and ordered Petitioner immediately released from custody after concluding that there was no lawful basis for her detention. Petitioner now seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). For the reasons set forth below, the Court will grant Petitioner's motion in part.

I.    **Background[1]**

Petitioner entered the United States in 2010. Dkt. 1 ¶ 3. In approximately November 2025, Petitioner was detained and provided a Notice to Appear ("NTA"), though the NTA listed "the wrong name, the wrong country of nationality, the wrong date of birth, and no charges of removability." *Id.* ¶¶ 4, 21. On January 8, 2026, an immigration judge ("IJ") directed the

---

[1] The Court draws the facts from Petitioner's petition. Respondents do not appear to dispute the underlying facts in their opposition to Petitioner's motion for attorney's fees. *See generally* Dkt. 25.

Department of Homeland Security ("DHS") to file a corrected NTA within seven days. *Id.* ¶ 5. DHS had not complied by the date of Petitioner's next hearing, January 22, 2026, and the IJ granted Petitioner's motion to terminate removal proceedings. *Id.* DHS reserved the right to appeal the IJ's termination order and continued to detain Petitioner. *Id.* ¶¶ 6, 9. Petitioner did not receive a bond hearing while in detention. *Id.* ¶ 8.

Petitioner filed a petition for a writ of habeas corpus on January 24, 2026, arguing that the NTA was defective and that her ongoing detention without a bond hearing was unlawful. *See generally id.* On January 27, 2026, Petitioner filed an emergency motion for release from detention on the grounds that she was being unlawfully detained under the wrong name, "Elizabeth Bravo Cortez," and describing the harsh conditions of her detention. *See generally* Dkt. 7. The Court ordered that Respondents "verify to the Court" the basic facts of Petitioner's detention and the status of her immigration proceedings, "and to provide the Court with copies of any Notices to Appear, Warrants for Arrest of Alien, or Notices of Custody Determination issued in connection with Petitioner's current detention, no later than today, January 29, 2026, at 4 p.m." Dkt. 9. Respondents failed to timely respond and "the Court conclude[d] that there [wa]s no lawful basis for Petitioner's detention" and ordered her immediate release. Dkt. 10. On February 12, 2026, Petitioner moved for attorney's fees under EAJA. Dkt. 15 ("Fee Petition" or "Fee Pet.").

## II.    **Legal Framework**

EAJA provides "an exception to th[e] rule" that "each party is usually required to bear its own attorneys' fees." *Castaneda-Castillo v. Holder*, 723 F.3d 48, 56 (1st Cir. 2013). Specifically, EAJA mandates that:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

### III.   Discussion

#### A.   Prevailing Party in a Civil Action

Respondents do not dispute that Petitioner was a "prevailing party" in this case, where the Court granted Petitioner's habeas petition and ordered her immediate release from custody. *See generally* Dkt. 25 ("Opposition" or "Opp."). Respondents argue, however, that habeas proceedings are not "civil actions" for the purposes of EAJA. *Id.* at 4–7. The Court has already addressed this argument and concluded that immigration habeas cases *are* civil actions for the purposes of EAJA, *see Orrego Orrego v. Hyde*, 2026 WL 1480362, at *2 (D. Mass. May 27, 2026), and incorporates that same reasoning and conclusion here.

#### B.   Not Substantially Justified

Respondents also contend that they were substantially justified both in detaining her in the first instance and in litigating the habeas petition at issue—a bold position, given the facts of Petitioner's case. Opp. at 7–15. The First Circuit has explained that:

> It is well-settled that the government bears the burden of establishing that its position was substantially justified. The government needs to satisfy this burden by a preponderance of the evidence, and it must justify the positions it took both during the litigation and the agency proceedings that preceded that litigation. These positions must have a reasonable basis in both law and fact.

*Castaneda-Castillo*, 723 F.3d at 73 (citations omitted).

The Court begins with the agency proceedings that preceded the habeas litigation. Respondents argue that detaining Petitioner without a bond hearing was substantially justified because, in Respondents' view, she was subject to detention under 8 U.S.C. § 1225(b)(2) rather than 8 U.S.C. § 1226(a), and that continuing to detain Petitioner after the IJ granted Petitioner's motion to terminate removal proceedings was substantially justified because DHS reserved the right to appeal and therefore the IJ's order was not yet final. Opp. at 8–15. But Respondents fail

3

to acknowledge outside of the background section that they detained Petitioner under the wrong name, nationality, and date of birth, and then failed to submit a corrected NTA as directed by the IJ. *Id.* at 3, 7–15. These actions are utterly indefensible, so perhaps it is no surprise that Respondents elect not to engage with such distasteful facts. It would certainly baffle logic to argue that placing someone in removal proceedings under a completely different identity, and then failing to issue a corrected form for two weeks after being ordered to do so, had a "reasonable basis in both law and fact." *Castaneda-Castillo*, 723 F.3d at 73. Because the Court concludes that the underlying agency conduct was not substantially justified, the Court need not evaluate Respondents' litigation positions.

### C.    Calculation of Fees

EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 8 U.S.C. § 2412(d)(2)(A). The First Circuit has previously approved using the Annual Consumer Price Index for all Urban Consumers ("CPI-U") to calculate cost-of-living adjustments, *see Castaneda-Castillo*, 723 F.3d at 76–77, as Petitioner suggests, Fee Pet. at 7. Accordingly, based on the 2026 CPI-U for the Boston region, Petitioner seeks payment for 45.75 hours at $260.16 per hour, for a total of $11,902.32 in legal fees and $5.00 in costs. *Id.* at 7–8.

Respondents do not take issue with the hourly rate calculated by Petitioner, but argue that the hours sought are excessive.[2] *See* Opp. at 15–17. The Court agrees, given the limited duration

---

[2] The Court agrees but notes that Respondents' assertion that this is a "simple habeas petition challenging detention where hundreds of similar petitions had been previously filed with this Court," Opp. at 16, both trivializes the fundamental rights at issue and unfairly impugns opposing counsel's efforts. While Respondents may deem these cases less worthy of attention and care, *see* Opp. at 2 (mistakenly describing the January 24, 2026 habeas petition as having been filed on February 24, 2026); *id.* at 3 (titling subheading "FACTS *ALLED* IN PETITION" (emphasis added)); *id.* at 3–4, 8–9 (erroneously referring to Petitioner by "he" and "his"), Petitioner's election to devote more effort, and the consequently superior work product, is appreciated by this Court.

4

of the case, and concludes that 35.75 hours is reasonable.  *See Sinclair v. Berryhill*, 284 F. Supp. 3d 111, 116 (D. Mass 2018) ("District courts have broad discretion in determining reasonable fees." (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))).  Accordingly, Petitioner is entitled to $9,300.72 in attorney's fees.

## IV.    Conclusion

For the foregoing reasons, the Court awards Petitioner's attorney's fees totaling $9,300.72 and costs totaling $5.00.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated: July 6, 2026                                      Judge, United States District Court

5